THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WALTER MANTEI and Others, Appellants.

County Court, Tioga County, July 16, 1929.

---

* See, also, 128 Misc. 39; 134 id. 604.

*Tillapaugh & Relihan,* for the appellants.

*George L. Andrews, District Attorney,* for the respondent.

Turk, J. The defendants were charged with being common gamblers in violation of section 970 of the Penal Law. December 16, 1928, was Sunday.

According to history as given by Lord Mansfield, anciently the courts of justice did sit on Sunday and all days were used alike for the hearing of causes. It has been said that they had two reasons for this. One was in opposition to the heathen, who were superstitious about the observance of days and times, conceiving some to be unlucky and others to be lucky, and, therefore, the Christians laid aside all observances of days. A second reason was that by keeping their courts open at all times they prevented Christians from resorting to heathen courts. In the year 517 a canon was made in the church by which Sunday was ordered to be *dies non juridicus.* This canon of the church was adopted by and incorporated into the common law and it has been consistently held from that time on that, under the common law, no judicial act ought to be done on the " Sabbath."

The cessation from all secular employment on Sunday is one of the earliest observances of the · Christian world. In *People ex rel. Margus* v. *Ramsey* (128 Misc. 39) Mr. Justice Heffernan observes: " Sunday legislation is more than fifteen centuries old. It originated in Rome A. D. 321 when Constantine the Great passed an edict commanding all judges and magistrates of cities to rest on the venerable day of the sun."

In the absence of statute, therefore, a judge or magistrate has no authority to hold court on Sunday. (*Story* v. *Elliott,* 8 Cow. 27; *Pulling* v. *People,* 8 Barb. 384.)

Section 5 of the Judiciary Law provides that " a court shall not be opened, or transact any business on Sunday, except to receive a verdict or discharge a jury. An adjournment of a court on Saturday, unless made after a cause has been committed to a jury, must be to some other day than Sunday. But this section does not prevent the exercise of the jurisdiction of a magistrate, where it is necessary to preserve the peace, or, in a criminal case, to arrest, commit or discharge a person charged with an offense, * * *."

Sunday means a calendar day, which consists of twenty-four hours and commences and ends at midnight.

There is no doubt that these defendants were arrested, pleaded guilty and were sentenced on Sunday. There is considerable doubt if all, or any of the defendants were guilty of the crime of being a common gambler, under the decision in the case of *People*

v. *Bright* (203 N. Y. 73), but having pleaded guilty it is unnecessary to discuss that at this time, and the sole question to be determined is: was it necessary for the magistrate to sentence these defendants on Sunday in order to preserve peace?

The case of *People ex rel. Price* v. *Warden* (73 App. Div. 174) has been cited but that case applies to a conviction in the city of New York where the charter of the city of New York expressly provided that the magistrates of the city of New York might hold court on Sunday, and that case has no application here. There are a number of other cases, which have been decided, having reference to conviction on Sunday in the city of New York, and among these is the case of *People ex rel. Burke* v. *Fox* (205 N. Y. 490). In this case Judge WERNER discussed section 5 of the Judiciary Law and said " there are many minor offenses colloquially classified as crimes, which are merely violations of police regulations." Among these are vagrancy, public drunkenness, and various kinds of disorderly conduct. He stated that these and other minor offenses, all of which appear to disturb the public peace, fall within the meaning of the language of section 5 of the Judiciary Law.

Common gambling under section 970 of the Penal Law is a crime under all the definitions of crime. Having been arrested, the magistrate, under section 5 of the Judiciary Law, had power to commit or discharge these defendants, but he had no power to try or pass judgment. Had these defendants been committed to jail it would have " preserved the peace " fully as well as convicting and sentencing them.

*People ex rel. Margus* v. *Ramsey* (128 Misc. 39) is clearly in point. In that case the relators were convicted and sentenced by a police magistrate of the city of Schenectady for possessing a revolver in violation of section 1897 of the Penal Law. They pleaded guilty and were sentenced on Sunday. A writ of habeas corpus was issued on their behalf and Mr. Justice HEFFERNAN, after reviewing many cases in this State and some in other States, held that section 5 of the Judiciary Law did not permit police magistrates to actually try and sentence on Sunday a defendant who was charged with a crime.

The provisions of section 5 of the Judiciary Law could not be waived by these defendants. (*Ruderfer* v. *Kuflik*, 222 App. Div. 626.)

Even in a civil case a party may not waive a rule of law, a statute or even a constitutional provision enacted as a matter of public policy. (*Sentenis* v. *Ladew*, 140 N. Y. 463.)

It is a matter of public policy that no proceedings of the court

should be held on Sunday other than those necessary for the preservation of peace and the arrest and detention of those charged with crime. To hold otherwise would break down and destroy those splendid principles of Sunday observance which have come down to us for many generations long past.

My conclusion is that these defendants were illegally tried, convicted and sentenced and that the judgment of the lower court must be reversed.

An order may be entered accordingly.