Duncan S. McNab, J.
Defendant Ronald Payne was charged in Indictment No. 290/75 with two counts of sodomy in the first degree (Penal Law, § 130.50), and one count each of rape in the first degree (Penal Law, § 130.35), burglary in the first degree (Penal Law, § 140.30), robbery in the first degree (Penal Law, § 160.15), and petit larceny (Penal Law, § 155.25). Defendant interposed the defense of alibi. Following a Wade hearing, trial began with the selection of a jury on the afternoon of Tuesday, October 26, a process which concluded in the afternoon of Thursday, October 28. The court then heard testimony into the morning of Friday, November 5, *100 following which the attorneys summed up and the court charged the jury, which retired to deliberate at approximately 4:55 p.m. that afternoon. The jury, having been held over to continue deliberations on Saturday, November 6, ultimately returned the following verdict at approximately 12:45 a.m. on Sunday, November 7: guilty of rape in the first degree under the first count, guilty of sodomy in the first degree under the second count, not guilty of sodomy in the first degree under the third count, guilty of burglary in the first degree under the fourth count, not guilty of robbery in the third degree[1] under the fifth count, and not guilty of petit larceny under the sixth and final count.
An interesting and highly unusual question of law was presented when the defendant, after moving to set the verdict aside as inconsistent, made a second oral motion to set the verdict aside based on the court’s having answered the jury’s request for re-explanation of the robbery and larceny crimes at approximately 12:15 a.m. on Sunday morning, alleging that the court acted in violation of the provisions governing court business on a Sunday under section 5 of the Judiciary Law. The court, having heard all the trial testimony, had no trouble in denying the first branch of defendant’s motion. For the following reasons of law and fact, and particularly under the circumstances of this case, the second branch was also quite properly denied.[2]
To place defendant’s motion in its proper perspective, this court has re-examined the full sequence of events which occurred after the jury retired to deliberate at 4:55 p.m. on Friday, November 5. The jury proceeded with deliberations until the dinner break, at roughly 6:30 p.m. After resuming deliberations around 8:30 p.m., the jury at 8:55 p.m. sent out a note requesting the court’s charge on the rape count, plus the first day’s testimony of the alleged rape victim, Cynthia Kirkpatrick. Following completion of the readback and reinstruction, the jury at 11:00 p.m. resumed deliberating until 11:30 p.m., when they were sequestered for the evening.
*101 The jury resumed deliberations at 10:00 a.m. on Saturday, November 6. At 12:15 p.m., they asked for, and received, the definition of reasonable doubt as well as permission to skip count one (the rape) and return to it later. At 2:29 p.m. they asked for further instructions concerning whether they had to consider one witness’ testimony to be true if they, considered another’s to be false. After receiving instructions, the jury went back out until 4:16 p.m., at which time they reported an impasse on all counts and were instructed to continue deliberations. In view of the alleged hopeless deadlock, the defendant moved for a mistrial and for discharge of the jury. The court denied the motion.
The jury made a further request at 6:05 p.m. for the law pertaining to forcible compulsion, over-all implied threat, and what appeared to be a firearm. Upon the court’s further instructions, the jury broke for dinner at roughly 7:30 p.m. and once again resumed deliberations around 9:00 p.m. on Saturday night.
With the exception of a request for use of a blackboard, nothing further was heard from the jury for the next two and one-half hours. During this time, in chambers and off the record, the court discussed with both attorneys the possibility of holding the jury over again and resuming deliberations, if necessary, on Sunday. Both counsel indicated they would go along with whatever decision the court might make in that respect. Then at approximately 11:40 p.m., the jury sent out a note which read as follows: "Due to current critical point in our deliberations — we request 15 minutes extension approx, to 12:00 p.m.” The request was granted, without objection. Some moments later, at about 12:10 a.m. in what had by then become Sunday, November 7, the jury made the specific request at issue here, i.e., "to hear the difference between robbery and petit larceny.”[3] The court complied with the request and repeated in part and amplified upon its original charge on the law as to these two counts, again without any objection. Some 20 minutes or so later, the jury returned verdicts on all counts as previously described.
Section 5 of the Judiciary Law, pursuant to which defendant’s motion is being made, states in relevant part: "A court shall not be opened, or transact any business on Sunday, *102 except to receive a verdict or discharge a jury ** * * An adjournment of a court on Saturday, unless made after a cause has been committed to a jury, must be to some other day than Sunday.” Clearly, the court in the present case was not "opened” on a Sunday, but merely allowed the jury, at the jury’s own request, to continue their deliberations which had commenced on the previous Friday afternoon. (Cf. Jones v East Meadow Fire Dept., 21 AD2d 129.) The situation here in no way resembles the practice of having an individual arraigned, plead guilty, and receive sentence all on Sunday, a practice condemned by various courts of this State many years ago. (People v Mantei, 134 Misc 529; see, also, People ex rel. Meyer v Warden, 269 NY 426, where the Court of Appeals held a judgment void where defendant was brought to trial on Saturday, found guilty by a jury and sentenced on Sunday. The opinion fails to note at what point the case went to the jury.)
The court is more inclined to feel that the statement made to the jury in answer to their request at 12:15 a.m. Sunday, November 7, was merely incidental to their deliberations[4] and the lawful receipt of their verdict, a point of view approvingly expressed by our Court of Appeals in People v Santoro (229 NY 277, issue discussed only in dissenting opn).
However, even assuming arguendo that the court violated section 5 of the Judiciary Law, any such error, under the circumstances here, was solely of the most harmless and technical variety. As previously indicated, the jury itself, at 11:40 p.m. on Saturday, requested a few more minutes of deliberation after alerting the court that it had reached "a critical state” of deliberations. Neither attorney, in chambers, voiced any objection to the court’s decision permitting the jury to continue. In fact, it is the court’s recollection that the attorneys encouraged the court to attempt to conclude the case before any further delay. It should be noted too that, despite the fact that the jury had started deliberations on Friday afternoon, the approximate total time spent in actual deliberations at that point still was, at most, only some 13Vfc *103 hours. Finally, upon the court’s giving the jury further instruction upon the difference between robbery and larceny at 12:15 a.m. Sunday, defendant made no objection. By defendant’s failure to object at that time, coupled with his earlier express acquiescense to proceed, he in effect waived any objections thereto. (Roberts v Bower, 5 Hun 558; but see Jones v East Meadow Fire Dept., 21 AD2d 129, supra; People v Mantei, 134 Misc 529, supra.) Finally, even if, arguendo, defendant did not or could not waive his objection, any suggestion that defendant was prejudiced by the singular fact that these instructions just happened to be given shortly after the clock struck midnight is totally without merit, since the jury soon thereafter acquitted the defendant of both crimes requested in the 12:15 a.m. note.
The court would also note in passing that the once inflexible notion upon which section 5 of the Judiciary Law almost certainly is founded that all secular employment must cease with the first coming of Sunday has gradually been eroded over the years, as most recently witnessed by the passing of the so-called Sunday "Blue Laws”, under section 9 of the General Business Law. (See People v Abrahams, 40 NY2d 277.) While in no way imputing any constitutional infirmity with respect to section 5 of the Judiciary Law, the court would note that here, particularly where counsel acquiesced in the jury’s very reasonable request for a few minutes more time, an ancient shibboleth, in and of itself, must not be allowed to undo the conscientious efforts of a carfully selected jury.
Under all the circumstances, defendant’s motion to set aside the verdict is denied.

. The court having dismissed for reasons of law the alleged crime of robbery in the first degree as charged in count five at the close of the People’s case, submitted the lesser included offense of robbery in the third degree to the jury.

. The court would note that while defendant did not renew his motion in writing prior to sentence, the grounds upon which defendant based his motion to set aside would fall under CPL 330.30 (subd 1), for which CPL 330.40 (subd 1) specifically provides no writing is required.

. This request was discussed with attorneys in chambers and both the District Attorney and defense counsel appeared eager to bring this case to a conclusion.

. The court would also note CPL 310.30, which in pertinent part states, "At any time during its deliberations, the jury may request the court for further instruction * * * with respect to the law * * * Upon such a request the court * * * must give such requested * * * instruction”. (Emphasis added.) There is no qualification in this or any other section of the CPL as to what time or day of the week the court may do so.